FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 16, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CATINA S., | No. 1:19-CV-03033-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 12, 13. Attorney Christopher H. Dellert represents Catina S. (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES** Plaintiff's Motion for

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on August 17, 2016. Tr. 103. She alleged her disability began on January 1, 2013, Tr. 239, due to mental problems, a loss of appetite, bowel complication, and back problems, Tr. 308. The application was denied initially and upon reconsideration. Tr. 138-41, 148-54. Administrative Law Judge (ALJ) Lawrence Lee held a hearing on June 1, 2018 and heard testimony from Plaintiff and vocational expert Tosha Adams. Tr. 56-102. The ALJ issued an unfavorable decision on July 3, 2018. Tr. 14-24. The Appeals Council denied review on December 20, 2018. Tr. 1-4. The ALJ's July 3, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on February 20, 2019. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 43 years old at the date of application. Tr. 239. Plaintiff reported that the highest grade she completed was the eleventh, and that she had attended special education classes. Tr. 309. Her reported work history includes the jobs of sandwich artist, in home specialist, waitress, and cashier. Tr. 260. When applying for benefits Plaintiff reported that she stopped working on July 1, 2013 because of her conditions. Tr. 308.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo,

deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th

Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, she is found "disabled." 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 3, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from August 17, 2016 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 17, 2016, the date of application. Tr. 16.

At step two, the ALJ determined that Plaintiff had the following severe impairments: depression and back pain. Tr. 16.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 16.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following limitations:

> She can lift and carry up to 20 lbs occasionally, and 10 lbs frequently; she can sit up to 6-hours, stand up to 6-hours, and walk up to up to 6-hours in an 8-hour workday; she can push and pull within the weight limits described for lifting and carrying; she can frequently climb ramps and stairs, and occasionally ladders, ropes, or scaffolds; she can frequently balance, and occasionally stoop, kneel crouch, and crawl; she can tolerate up to loud nose; and she is limited to performing simple, routine tasks. She also must use the restroom four times per day for 5-10 minutes at a time during each restroom break.

Tr. 18. The ALJ identified Plaintiff's past relevant work as sandwich maker, bread baker, informal waitress, and cashier II and found that she could perform her past relevant work as a cashier II. Tr. 22.

As an alternative to an unfavorable decision at step four, the ALJ made a step five determination that, considering Plaintiff's age, education, work

experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of racker, produce weigher, and sock ironer. Tr. 24. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from August 17, 2016, through the date of the ALJ's decision. *Id*.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to address Plaintiff's migraines at step two, (2) failing to properly weigh Plaintiff's symptom statements, and (3) failing to properly weigh the medical opinions in the record.

## DISCUSSION

**1. Step Two**

Plaintiff argues that the ALJ erred by failing to address Plaintiff's migraines at step two. ECF No. 13 at 4-8.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b).

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. "[O]nce a claimant has shown that [she] suffers from a medically determinable impairment, [she] next has the burden of proving that these impairments and their symptoms affect [her] ability to

perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment and that such impairment is severe. *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

The ALJ's decision did not address Plaintiff's migraines. Tr. 14-24. However, Plaintiff did not allege headaches or migraines when applying for benefits, and Plaintiff did not meet her burden of proof that the migraines were a medically determinable impairment.

When applying for benefits, Plaintiff did not include migraines or headaches as a condition that limited her ability to work. Tr. 308. When requesting Reconsideration in December of 2016, her attorney stated that "Her migraines average 1 to 2 times a week. She is usually down and out for about 5 hours." Tr. 320. She completed a Function Report stating that she experienced "Headaches – Migraines." Tr. 326. In January of 2017, Plaintiff completed a Headache Questionnaire detailing the severity and frequency of her headaches. Tr. 337-38. She stated that she was currently only taking Aleve for her headaches, and she had last been to a doctor for the headaches back in April of 2014. Tr. 338. When requesting a hearing, her attorney stated that "Her migraines average 1 to 2 times a week requiring laying down for about 5 hours each time." Tr. 347. However, these statements to Social Security do not establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 416.921.

Likewise, the medical records only contain statements from Plaintiff regarding her migraines. On August 15, 2012, she told John Colver, PA-C that she had "been on several different medications for headaches throughout the years, noting naproxen, and Fiorinal in particular." Tr. 388. He diagnosed her with chronic headaches, prescribed naproxen and instructed her to follow up in six

weeks to review the effectiveness of treatment. Tr. 390. However, Plaintiff did not follow up with Mr. Colver. In her April 2014 psychological evaluation, she reported headaches occurred "3-4 times a week due to stress and lack of sleep." Tr. 376. During her psychological evaluation in February of 2016, she reported that "[s]he gets headaches a couple times a week." Tr. 431. In the records from Qliance Medical Group, one of her current problems is listed as "Migraine without aura, not interactable, without status migrainosus." Tr. 458. On October 26, 2016, she reported to Louise Boxill, ARNP that she experienced migraines and was previously treated with trigger point injections in the shoulder and the base of the neck, but the headaches were worse after a week. Tr. 462. She also reported that the headaches were accompanied with vomiting and difficulty lifting her head. *Id*. Despite seeking treatment for other impairments, such as IBS, anxiety, and depression, Plaintiff did not seek additional treatment for migraines and did not request additional medication to help manage the migraines after the initial prescription of naproxen. Tr. 458-512. Her self-reports of experiencing headaches on limited occasions throughout the record are not sufficient to establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 416.921.

Plaintiff alleges that the ALJ erred by failing to discuss Plaintiff's migraines, regardless of whether or not they were considered severe. ECF No. 14 at 2-5. However, Plaintiff was first required to establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. *See* 20 C.F.R. § 416.921. Her own statements of symptoms, a diagnosis, or a medical opinion are not sufficient to establish the existence of an impairment. *Id*. Therefore, the ALJ was not required to discuss the migraines at step two or throughout the record.

2. **Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements associated with her emotional impairments were unreliable. ECF No.

12 at 8-13.[2]

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. Specifically, the ALJ found that (1) there was very minimal medical treatment, (2) Plaintiff's treating provider found her able to work; and (3) Plaintiff did not take her medications as prescribed. Tr. 20-21.

### A. Medical Treatment

The ALJ's first reason for rejecting Plaintiff's symptom statements, that there was very minimal evidence of medical treatment, is specific, clear and convincing.

Unexplained or inadequately explained reasons for failing to seek medical treatment casts doubt on a claimant's subjective complaints. *Fair v. Bowen*, 885

---

[2]The ALJ determined that Plaintiff's symptom statements concerning both her physical and mental health were unreliable. Tr. 20. Plaintiff only challenged the ALJ's treatment of her reported emotional symptoms. ECF No. 12 at 8-10. The Court addresses the ALJ's rejection of all Plaintiff's symptom statements for clarity.

F.2d 597, 603 (9th Cir. 1989). Here, Plaintiff alleged disability beginning January 1, 2013. Tr. 239. She failed to seek treatment between August 2012, Tr. 388-91 (an evaluation for GAU benefits), and May of 2014, Tr. 414-19 (in the emergency department for low back pain). Plaintiff was then seen at the hospital for an acute respiratory infection in July of 2014. Tr. 403-07. And she received a psychological evaluation in February of 2016 as a part of her application for benefits from the State of Washington. Tr. 431-35. However, she did not seek treatment for the impairments associated with her disability until October of 2016. Tr. 462-67.

The ALJ found that years of going without treatment for her impairments demonstrates that her symptoms were not as severe as alleged. Tr. 20. Plaintiff argues that the ALJ failed to make an inquiry into why Plaintiff went long periods without treatment. ECF No. 12 at 11. The ALJ is to consider the Plaintiff's proffered reasons for failing to seek treatment. *Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). However, Plaintiff failed to proffer a reason she did not seek treatment. *See Fair*, 885 at 603 ("While there are any number of good reasons for not doing so . . . a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony."). Nowhere in the record or in her briefing before this Court did Plaintiff provide a reason to explain her lack of treatment. ECF Nos. 12 at 11; 14 at 5. Therefore, the ALJ's reason for rejecting Plaintiff's symptom statements is supported by substantial evidence and meets the specific, clear and convincing standard.

**B.  Treating Provider's Opinion**

The ALJ's second reason for rejecting Plaintiff's symptom statements, that her treating provider "indicate[d] that the claimant is not [too] disabled to work," Tr. 20, is specific, clear and convincing.

The evaluation of a claimant's symptom statements and their resulting

limitations relies, in part, on the assessment of the medical evidence.  See 20 C.F.R. § 416.929(c) ("we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."); S.S.R. 16-3p.  Here, Plaintiff's treating physician, Victor Sobolewski, D.O., consistently found that "[t]he patient[']s Karnofsky scale value is 80.  Defined as able to work; normal activity with effort; some signs or symptoms of disease.  Overall intensity and frequency of services are driven by [t]he patient's overall frailty."  Tr. 495, 499, 503.  The ALJ noted that the "Karnofsky Performance Status Scale was not controlling over disability under the Social Security Act," but that it was an accepted metric within the medical field to gauge a patient's overall functioning.  Tr. 20.  Here, a functioning level that is not work preclusive is inconsistent with Plaintiff's reported severity of symptoms.  Therefore, the ALJ's reason for rejecting Plaintiff's symptom statements is supported by substantial evidence and meets the specific, clear and convincing standard.

### C. Failure to Take Medications

The ALJ's third reason for rejecting Plaintiff's symptom statements, that she failed to take her medications as prescribed, is not specific, clear and convincing.

An ALJ can reject a Plaintiff's testimony for failing to take their medication. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).  Here the ALJ found that despite Plaintiff alleging severe mental health symptoms she did not take her Celexa as prescribed.  Plaintiff was prescribed Celexa to treat her anxiety and depression.  Tr. 493, 495, 497.  At the hearing, Plaintiff testified that she did not take the Celexa because it caused stomach problems, nausea, and migraines. Tr. 90-91.  However, she did not report this to her provider and she did not request additional assistance in addressing her symptoms, such as different medication.  Instead, she refused

///

entry to Dr. Sobolewski in her final appointment in February of 2018. Tr. 493.[3]
She then failed to seek any additional treatment prior to her June of 2018 hearing.
The Ninth Circuit has found that it is a questionable practice to chastise one with a
mental impairment for the exercise of poor judgment in seeking rehabilitation.
*Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Therefore, considering the
limited amount of time between Plaintiff starting her prescription and the hearing
testimony, this does not meet the specific, clear and convincing standard.
However, any error resulting from this reason not meeting the required standard
would be harmless because the ALJ has provided other sufficient reasons to reject
Plaintiff's symptom statements. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th
Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error
was inconsequential to the ultimate nondisability determination").

In conclusion, the ALJ provided specific, clear and convincing reasons to support his determination rejecting Plaintiff's symptom statements. *See Carmickle v. Comm., Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record).

### 3. Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Alyssa Ruddell, Ph.D. ECF No. 12 at 13-16.

In weighing medical source opinions, the ALJ should distinguish between

---

[3]The ALJ represents that Plaintiff was refused entrance into Dr. Sobolewski's clinic. Tr. 20. However, Dr. Sobolewski was treating Plaintiff in her home. Tr. 495. Therefore, the "Entry Refused" notation on February 2, 2018 is consistent with Plaintiff refusing treatment by Dr. Sobolewski in her home. Tr. 493.

three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

On April 21, 2014, Dr. Ruddell completed a Psychological/Psychiatric Evaluation form for the Washington Department of Social and Health Services (DSHS). Tr. 376-80. She diagnosed Plaintiff with Insomnia with mental/medical comorbidity, anxiety disorder, somatic symptom disorder with persistent pain, and cannabis use disorder. Tr. 377. She opined that Plaintiff had marked limitations in six of the thirteen basic work activities and a moderate limitation in an additional six basic work activities. Tr. 378. She opined that these limitations would persist with available treatment for twelve to eighteen months. *Id*.

On February 1, 2016 Dr. Ruddell completed a second

Psychological/Psychiatric Evaluation form for DSHS. Tr. 431-35. She diagnosed Plaintiff with anxiety disorder and major depressive disorder. Tr. 432. She again opined that Plaintiff had marked limitations in six of the thirteen basic work activities and a moderate limitation in an additional six basic work activities. Tr. 433. She further opined that these limitations would persist with available treatment for 12 months. *Id.*

Victor Sobolewski, D.O., who was treating Plaintiff for her anxiety and depression, repeatedly found Plaintiff able to work. Tr. 495, 499, 503. Therefore, Dr. Ruddell's more limited opinions were contradicted, and the ALJ was required to provide specific and legitimate reasons to reject the opinions.

The ALJ assigned these opinions "little weight" because Plaintiff's presentation at the evaluations did not accurately represent her mental functioning throughout the alleged disability period. An ALJ's finding that the claimant exaggerated symptoms and that the provider was not aware of the exaggeration is a specific and legitimate reason to reject the provider's opinion. *Edlund*, 253 F.3d at 1157.

First, the ALJ noted that Plaintiff made inconsistent statements to Dr. Ruddell. In the April of 2014 evaluation Dr. Ruddell stated that Plaintiff "spends time with no one. Participation in organized social activities: church 'as many times as I can.'" Tr. 21 *citing* Tr. 377. In the February of 2016 evaluation, Plaintiff reported she spent time with people, but not in organized social activities. *Id. referring to* Tr. 432 ("She spends time with 'people.' No participation in organized social activities.). The ALJ also referred to Plaintiff's testimony that she spends time with her grandchildren and her foster mother. *Id. referring to* Tr. 77-78, 87-88. These inconsistent statements demonstrate that Plaintiff was less than forthcoming to Dr. Ruddell regarding her functional abilities.

Second, the ALJ found that Plaintiff had a robust range of daily activities including going to the library, using the bus for transportation, walking to various

locations, being able to find locations with the use of GPS, and performing household chores. Tr. 21. The ALJ failed to articulate how Plaintiff's reported activities demonstrated an exaggerated presentation. *Id.* Therefore, this example failed to support the ALJ's determination.

Third, the ALJ found that Plaintiff reported symptoms of both visual and auditory hallucinations to Dr. Ruddell, but did not report these symptoms to other providers. Tr. 21. In the April of 2014 evaluation, Plaintiff reported visual hallucinations that "consist of seeing colors and shadows," and auditory hallucinations that "consist of hearing sounds. Occasionally she hears words, like her name." Tr. 379. In the February of 2016 evaluation, she reported visual hallucinations that "consist of seeing lights because of eye surgery/eye condition," and audio hallucinations that "consist of hearing voices. 'They remind me of things.'" Tr. 434. Nowhere else in the record does Plaintiff report hallucinations. Furthermore, between the two evaluations, her reported hallucinations are inconsistent.

Fourth, the ALJ found that Plaintiff's "treating physician described frailty and helplessness as significant factors in the claimant's complaints, and indicated that she was not as limited as she subjectively believed." Tr. 21. Dr. Sobolewski stated that "Overall intensity and frequency of services are driven by '[t]he patient's overall frailty," and that "[a]ssociated signs and symptoms include helplessness, anxiety and depressed mood." Tr. 495. Therefore, the treating physician recognized Plaintiff's potential for exaggerating her symptoms. This supports the ALJ's finding that Plaintiff's presentations to Dr. Ruddell do not accurately represent her mental functioning.

Here, three out of the four reasons the ALJ provided support his conclusion that Plaintiff's presentation to Dr. Ruddell was not an accurate representation of her functional abilities. Therefore, the ALJ met the specific and legitimate standard, and the Court will not disturb his determination.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED January 16, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE